UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| W.R. as guardian ad litem for L.C. and J.C., minor children<br><br>        Plaintiff,<br><br>    v.<br><br>NEW JERSEY DIVISION OF YOUTH & FAMILY SERVICES ("DYFS"), et al.<br><br>        Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 09-288<br>          (JEI/KMW)<br><br>**OPINION** |

**APPEARANCES:**

BARRY, CORRADO, GRASSI & GIBSON, P.C.
Joseph C. Grassi
2700 Pacific Avenue
Wildwood, NJ 08260
    Counsel for Plaintiff

STATE OF NEW JERSEY DEPT OF LAW AND PUBLIC SAFETY
Kathleen M. Bartus
Richard J. Hughes Justice Complex
CN 116
Trenton, NJ 08625
    Counsel for DYFS, Charles Venti, Gwenette Hillman, and Eladia Gonzalez

LEARY, BRIDE, TINKER & MORAN, P.A.
Glenn R. Moran
7 Ridgedale Avenue
Cedar Knolls, NJ 07927
    Counsel for Renee Fountain

Dwayne Wynne
3122 Freemont Avenue
Camden, NJ 08105
    Pro se

**IRENAS**, Senior District Judge:

1

Presently before the Court are two motions for summary judgment. (Dkt. Nos. 76, 78) In response, Plaintiff has voluntarily withdrawn every claim except for two counts of negligence against the minor children's foster mother, Defendant Renee Fountain.[1] For the following reasons, the motions will be granted.

**I.**

Between September 19, 2000 and January 14, 2002, the new Jersey Division of Youth and Family Services ("DYFS") placed J.C. and L.C. - aged six and eight respectively - in Defendant Fountain's foster care. (Pl.'s Facts at ¶ 1)[2] In the summer of 2000, Fountain began dating Gilbert Harden. (*Id.* at ¶¶ 10-12) In the basement of the Harden home lived Defendants Dwayne Wynne and Vivian Moore. (*Id.* at ¶ 10) Fountain has known Wynne for many years and a reasonable inference can be made that Fountain knew of Wynne's prior convictions and incarcerations.[3] (*Id.* at ¶¶ 19, 23-27)

On several occasions, Fountain brought the minor children to

---

[1] This Court exercises its discretion to retain subject matter jurisdiction despite only state law claims remaining. *See* 28 U.S.C. § 1367(c)(3).

[2] Citations to "Facts" refer to the parties' obligation to submit statements of material facts not in dispute pursuant to L.Civ.R. 56.1 with summary judgment motions.

[3] Wynne does not have prior convictions for sexually related crimes.

stay at Harden's house overnight, in part, to play with Harden's minor child. (*Id.* at ¶¶ 39-40, 42) While at these slumber parties, Wynne is alleged to have sexually abused the minor children multiple times. (*Id.* at ¶¶ 52-56) Though the minor children reported the incidents to Fountain after the abuse occurred, she did not contact DYFS or otherwise seek the help of state protective services. (*See* Pl.'s Br. Appx., Exs. G, K) DYFS was not alerted until late February 2002, when the minor children's grandmother learned of the abuse. (*Id.* at Ex. L)

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district

court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III.

The two remaining counts against Fountain allege negligent supervision. Because the counts do not seem to differ in their allegations against Fountain, and Plaintiff does not argue otherwise, the Court will treat the two counts as asserting one claim for negligent supervision.

In support of her Motion, Fountain argues that she is protected by parental immunity. "[T]he doctrine of parental immunity ... preclude[s] liability in cases of negligent supervision, but not for a parent's willful or wanton failure to supervise his or her children." *Thorpe v. Wiggan*, 405 N.J.Super. 68, 72 (App.Div. 2009) (quoting *Foldi v. Jeffries*, 93, N.J. 533, 549 (1983). To establish willful or wanton conduct, "it must appear that the defendant with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference

4

to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result." *Foldi*, 93 N.J. at 549 (quoting *McLaughlin v. Rova Farms, Inc.*, 56 N.J. 288, 305-06 (1970). "[W]here willful and wanton conduct is not at issue, the immunity will only apply if a defendant's conduct implicates customary child-care issues or a legitimate exercise of parental authority or supervision." *Thorpe*, 405 N.J.Super. at 72.

    Here, the undisputed facts indicate that Fountain authorized her children to have a slumber party with her paramour's minor child. Fountain had no prior knowledge of Wynne's sexual predatory behavior. Even inferring that Fountain knew of Wynne's criminal history, including a felony robbery conviction, nothing suggests that Fountain had reason to suspect that her foster children were in danger of being sexually molested.[4] Accordingly, Fountain leaving the foster children unmonitored in her paramour's home was a customary child-care decision that can scarcely be said to be a wanton decision. To hold otherwise would subject parents to liability for the misconduct of all friends and acquaintances left temporarily unaccompanied with minor children.

---

[4] Plaintiff's arguments to the contrary notwithstanding, Fountain's previous romantic relationship with Voyce Smith who allegedly sexually abused one of Fountain's foster children does not establish liability in this case. DYFS ultimately found the claims against Fountain to be unfounded, though Smith was later incarcerated for endangering the welfare of a child.

Furthermore, Fountain's failure to report the abuse, though deplorable, did not cause further abuse. Fountain only learned of Wynne's alleged crimes after the last instance of abuse. Despite the tragic injuries alleged in this case, there is no legal basis to hold Fountain liable. As all other claims have been voluntarily withdrawn, the Court has no choice but to grant the motions for summary judgment.

**IV.**

For the reason set forth above, the motions for summary judgment will be granted.


Dated: 5/1/12                              /s/ Joseph E. Irenas

                                            **JOSEPH E. IRENAS, S.U.S.D.J.**